**Steven E. PERLMAN, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant–Appellee,**

**Janet Reno, Robert L. Ashbaugh, Howard L. Sribnick And Deborah Marie Briscoe,[1] Defendants.**

**Docket No. 01–6219.**

United States Court of Appeals, Second Circuit.

Argued: May 14, 2002.

Decided: Nov. 25, 2002.

---

1. By a November 22, 2000, stipulation and order, appellant voluntarily dismissed these defendants.

Mark S. Zaid, Lobel, Novins & Lamont, Washington, DC, for Appellant.

Andrew D. O'Toole, Assistant United States Attorney for the Southern District of New York (James B. Comey, United

States Attorney for the Southern District of New York, Gideon A. Schor, Assistant United States Attorney for the Southern District of New York, on the brief), for Appellee.

Before CABRANES, POOLER, and KATZMANN, Circuit Judges.

POOLER, Circuit Judge.

■ The Freedom of Information Act ("FOIA") requires courts to balance the rights of citizens to gain access to information that their federal government collects against the privacy interests of individuals and government employees discussed in the same information. Appellant Steven E. Perlman sought to exercise his FOIA rights when he requested a copy of a report investigating allegations of misconduct in the operation of an Immigration and Naturalization Service ("INS") program, focusing in large part on the actions of Paul Virtue, former INS general counsel. The United States District Court for the Southern District of New York (John G. Koeltl, *J.*) upheld the agency's decision to withhold the majority of the information in the report because it would violate Virtue's right to privacy. On appeal, Perlman argues that (1) the district court erred in concluding that two FOIA exemptions applied to prevent release of the information, and (2) the district court erred in finding that the privacy of Virtue, witnesses and third parties outweighed the public's interest in disclosure. We affirm the district court's determination that the information falls under certain FOIA exemptions. However, we find that the public interest in disclosure outweighs Virtue's right to privacy and order the release of additional information from the report.

**BACKGROUND**

Perlman filed a request under FOIA with the Department of Justice ("DOJ") on November 17, 1999, seeking the release of a 143–page Report of Investigation ("ROI") by DOJ's Office of the Inspector General. The ROI discusses allegations of impropriety on the part of INS officials in running the EB–5 Investor Visa Program ("EB–5"). Created in 1990, the EB–5 program offered special American visas to wealthy foreigners who invested between $500,000 and $1 million in business ventures employing at least 10 American workers. *See* 8 U.S.C. § 1153(b)(5)(A). After meeting certain conditions, the foreign investor eventually could receive permanent resident alien status. *See* 8 U.S.C. § 1186b. Visa investment companies sprung up in response to the creation of this program. The companies promoted the EB–5 program by offering foreign investors shares in limited partnerships, usually for $125,000, a fraction of the required investment of $500,000. Alien investors used promissory notes to meet EB–5's investment requirements. The notes permitted the investors to receive green cards without having to put up the remaining money. The INS approved this alternate route to obtaining an EB–5 visa. However, at some point allegations surfaced that former INS officials who were involved with the visa companies received improper preferential treatment from current INS employees. An investigation by DOJ's Inspector General followed, which generated the ROI.

The ROI examined the EB–5 program and the role that Virtue played in its administration while he was INS deputy general counsel and general counsel. Virtue left the INS in 1999. DOJ states that the ROI examined allegations that Virtue "improperly granted former INS officials preferential treatment and undue access and influence in the administration" of the EB–5 program. The ROI consists of (1) a synopsis, (2) a subject of investigation

form, containing basic information on Virtue, (3) a list of the 40 memoranda of investigation ("MOIs"), and (4) the MOIs.

DOJ's Office of Inspector General denied Perlman's FOIA request on January 27, 2000. The Inspector General based its denial on two FOIA exemptions: Exemption 6, which concerns personnel and similar files, and Exemption 7(C), which concerns reports compiled for law enforcement purposes. Perlman administratively appealed the denial on February 7, 2000. Before receiving an answer to his administrative appeal, however, Perlman, acting *pro se*, brought this lawsuit in the United States District Court for the Southern District of New York on August 7, 2000. He later retained counsel. In response to Perlman's administrative appeal, DOJ's Office of Information and Privacy ordered the disclosure of 49 report pages, most redacted in some respect, but otherwise upheld the prior denial.

On December 4, 2000, DOJ moved for summary judgment in the Southern District lawsuit, submitting in support of its motion three declarations describing the information in the ROI and the reasons for withholding the redacted portions. DOJ described the redacted material as falling into three categories: (1) the names of Inspector General agents involved in the investigation; (2) the names of witnesses and others mentioned in the ROI, along with any identifying information; and (3) the information regarding Virtue. The district court, after hearing argument on June 22, 2001, ordered DOJ to review its redactions to determine whether any of the remaining material should be disclosed and to submit an unredacted copy of the ROI to the court for *in camera* review. *Perlman v. United States Dep't of Justice,* No. 00 CIV. 5842, 2001 WL 910406, at *2 (S.D.N.Y. Aug. 13, 2001). DOJ released an additional 30 pages of the ROI, again with much of the information redacted, and submitted an unredacted copy of the report to the district court.

After reviewing the entire ROI, the district court granted DOJ's motion in part and denied it in part. *Perlman,* 2001 WL 910406, at *6–7. The district court found the ROI was compiled for law enforcement purposes because it investigated possible violations of law by Virtue, bringing it within Exemption 7(C). *Id.* at *3–4. The district court also determined that the ROI was a "similar file" because it contained private information similar to that contained in personnel files, bringing it within Exemption 6. *Id.* at *4–5. The district court further found Virtue's privacy interests in withholding the ROI outweighed the public's interest in disclosure. *Id.* The district court upheld the bulk of DOJ redactions, but ordered the release of a number of exhibit documents. *Id.*

**DISCUSSION**

■ We review an agency's decision to withhold records under FOIA *de novo,* and we "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions. . . ." 5 U.S.C. § 552(a)(4)(B); *see also Halpern v. Federal Bureau of Investigation,* 181 F.3d 279, 287–88 (2d Cir.1999) (standard of review on FOIA summary judgment ruling is *de novo* ); *Grand Cent. P'ship v. Cuomo,* 166 F.3d 473, 478 n. 2 (2d Cir.1999) (where district court reviews materials *in camera,* this court may do so on appeal). The district court reviewed the ROI *in camera,* and we have done so on appeal.

■ "The Freedom of Information Act adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern,* 181 F.3d at 286. To that

end, FOIA requires federal government agencies to make available to the public an assortment of agency records. *See* 5 U.S.C. § 552(a). The statute provides for nine exemptions from disclosure, two of which are implicated here. 5 U.S.C. § 552(b). Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). An agency challenging a FOIA request bears the burden of showing that a claimed exemption applies. 5 U.S.C. § 552(a)(4)(B). We interpret FOIA exemptions narrowly because "disclosure, not secrecy, is the dominant objective of [FOIA]." *Department of the Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

### A. Exemption 7(C)

█ Perlman argues that the district court erred in finding that Exemption 7(C) applied to the ROI because the report concerned an investigation of the EB–5 program as a whole and not Virtue personally. According to Perlman, the ROI is not a law enforcement record merely because the Inspector General's office wrote it. We agree with the district court that the ROI was compiled for law enforcement purposes.

█ Our review of a claim under Exemption 7(C) involves two steps: "a document must first be shown to have been compiled for a law enforcement purpose, and if so, the agency must also demon-strate that release of the material would result in one of the ... harms specified in the [FOIA]." *Ferguson v. Federal Bureau of Investigation*, 957 F.2d 1059, 1065 (2d Cir.1992). DOJ's Inspector General prepared the ROI, making the ROI eligible to be categorized as a law enforcement record because "[a]n Inspector General of a federal government agency engages in law enforcement activities within the meaning of FOIA." *Ortiz v. United States Dep't of Health and Human Servs.*, 70 F.3d 729, 733 (2d Cir.1995). After reviewing the ROI *in camera*, we agree with the district court that the ROI "was compiled in connection with an investigation by [the Office of Inspector General] into possible violations of law and, in particular, whether a certain employee, namely Virtue, committed acts that could subject that employee to criminal or civil penalties." *Perlman*, 2001 WL 910406, at *4; *see also Stern v. Federal Bureau of Investigation*, 737 F.2d 84, 89 (D.C.Cir.1984) (investigation by agency of its own employees is for law enforcement purposes "only if it focuses directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions") (internal quotation marks and citation omitted). The ROI thus was compiled for a law enforcement purpose, and we consider the potential harm in its release in Section C below.

### B. Exemption 6

█ Perlman argues the district court erred in finding that the ROI was similar to a personnel file because (1) the ROI did not involve a disciplinary proceeding; and (2) the ROI responded to specific allegations, not routine record keeping requirements. We disagree. An agency may withhold "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of per-

sonal privacy." 5 U.S.C. § 552(b)(6). The statute thus describes "similar files" broadly, and the term includes any "detailed Government records on an individual which can be identified as applying to that individual." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (internal quotation marks and citation omitted). Nothing in the language of Exemption 6 limits its scope in the manner that Perlman suggests. The ROI clearly is a "detailed Government record" replete with identifying information regarding Virtue and his alleged misconduct. It thus constitutes a "similar file" under Exemption 6.

### C. Balancing privacy rights and the public's interest in disclosure

■ Perlman argues that the privacy interests at issue—those of witnesses, third parties and Virtue—are substantially outweighed by the public's interest in exposing the flaws in the administration of the EB–5 program. He urges us to find error in the district court's conclusion to the contrary. We agree with the district court that the privacy interests of witnesses and third parties outweigh the public's interest in disclosure. However, after applying several factors we find relevant in assessing whether the information concerning a government employee should be disclosed to the facts of this case, we conclude that the public's interest in disclosure of the ROI, with limited exceptions, substantially outweighs Virtue's privacy interests.

As noted previously, in the case of the 7(C) exemption, we ask if the record was compiled for a law enforcement purpose and if its release would result in harm. The exemption applies "where the invasion of personal privacy resulting from release of the information would outweigh the public interest in disclosure." *Halpern*, 181

F.3d at 296. While both Exemptions 6 and 7(C) implicate privacy interests, the "standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files." *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). Because both exemptions are implicated here, we apply the stricter 7(C) evaluation of privacy interests. The decision to disclose information "must turn on the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *Id.* at 772, 109 S.Ct. 1468 (internal quotation marks and citation omitted).

We first evaluate the privacy interests of witnesses and third parties to the ROI. These parties possess strong privacy interests, because being identified as part of a law enforcement investigation could subject them to "embarrassment and harassment," especially if "the material in question demonstrates or suggests they had at one time been subject to criminal investigation." *Halpern*, 181 F.3d at 297. The public's interest in learning the identity of witnesses and other third parties is minimal because that information tells little or nothing about either the administration of the INS program or the Inspector General's conduct of its investigation. *See id.* The strong public interest in encouraging witnesses to participate in future government investigations offsets the weak public interest in learning witness and third party identities. We find that the district court correctly concluded that the names of witnesses and third parties, along with their identifying characteristics, were properly redacted.

Virtue, however, stands on different ground from witnesses and third parties to the investigation because of his status as former INS general counsel and the role he played in administering the EB–5 program. Virtue's privacy interest is "somewhat diminished" by his status as a government employee, although in accepting public employment one does not "not surrender all rights to personal privacy." *Kimberlin v. Department of Justice,* 139 F.3d 944, 949 (D.C.Cir.1998) (internal quotation marks and citations omitted). We recognize that a government employee who is the subject of an investigation possesses a strong privacy interest in avoiding disclosure of the details of the investigation. *Id.* at 949. The public, however, possesses a strong interest and "right to be informed about what their government is up to." *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468 (internal quotation marks omitted).

In balancing a government employee's privacy interests against the public's interest in disclosure, a court should consider several factors, including: (1) the government employee's rank; (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature. The factors are not all inclusive, and no one factor is dispositive. We now apply these factors in evaluating Virtue's privacy interests and the public's interest in disclosing the ROI.

**(1) Rank of government employee:** We adopt the United States Court of Appeals for the District of Columbia's rule "that the level of responsibility held by a federal employee," is an "appropriate consideration[ ]" when analyzing disclosure. *Stern,* 737 F.2d at 92 (ordering release of censure letter issued against a high-level FBI official, but withholding information regarding the disciplining of two low-level FBI employees). Here, this factor weighs strongly in favor of disclosure. Virtue was the INS general counsel, and the ROI investigates allegations that Virtue granted improper access to former INS officials with financial interests in various visa investment firms and gave preferential treatment to their requests. Virtue's high rank, combined with his direct responsibility for the serious allegations examined in the ROI, tilts strongly in favor of disclosure.

**(2) Degree of wrongdoing and strength of evidence against the employee:** This factor requires a court to examine the degree of wrongdoing allegedly committed by the employee and the strength of the evidence. Strong evidence of wrongdoing, combined with a serious offense, would weigh in favor of disclosure. Thus, in *Stern,* the court ordered disclosure where the government employee was "a high-level employee who was found to have participated deliberately and knowingly in the withholding of damaging information in an important inquiry," 737 F.2d at 93–94, but not for lower-level employees who "were not in any sense directly responsible ... but rather were culpable only for inadvertence and negligence." *Id.* at 92. Here, a substantial amount of evidence shows that Virtue allowed former INS officials with financial interests in the EB–5 program to exercise improper influence over the program's administration. Further, the degree of wrongdoing alleged is fairly serious, as Virtue's approval of the limited partnership proposals touted by the visa investment companies may have allowed aliens to improperly come to the United States. Both the amount of evi-

dence and degree of wrongdoing alleged weigh in favor of disclosure.

**(3) Availability of other means to obtain the information:** This factor examines whether the government is the only means for obtaining the desired information. Here, the release of the ROI by the government appears to be the only means available for obtaining information about the investigation. The government performed the investigation, has exclusive access to immigration and other records, and is in a unique position to interview witnesses. This factor argues for disclosure.

■ **(4) Whether the information sought sheds light on government activity:** This factor examines whether the information sought furthers FOIA's main purpose of "open[ing] agency action to the light of public scrutiny," *Rose,* 425 U.S. at 372, 96 S.Ct. 1592. The more the information sought sheds light on what the government is doing, the more this factor favors disclosure. *See Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. 1468 ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose."). The ROI investigated Virtue's role in administering the EB–5 program. While Virtue is discussed extensively, the

discussion focuses on his role as INS general counsel. The ROI investigates the extent to which former INS officials were able to obtain preferential treatment, undue access and exercise improper influence over the administration of the EB–5 program through their contract with Virtue. The ROI therefore sheds light on government activity, and this factor weighs in favor of disclosure.

■ **(5) Whether the information is related to job function, or is of a personal nature:** This factor is related to the government activity factor because the purpose of FOIA is to shed light on public rather than private activity. FOIA is not a tool to obtain personal information about government employees. Rather, the disclosed information must relate to the employee's performance of his public duties. Aside from providing some minor personal background information about Virtue, which should remain redacted, the ROI focuses exclusively on Virtue's performance as INS general counsel. Thus, this factor weighs heavily in favor of disclosure.

Each of the factors therefore weighs in favor of disclosure. The public's interest in the disclosure of the ROI substantially outweighs Virtue's interest in keeping the information private.[2] We vacate the judg-

---

2. We are mindful that the release of this final report does not impinge upon the protection afforded to preliminary materials compiled by government attorneys in the course of civil and criminal investigations. Traditional protections against the disclosure of legal and investigative documents, including the work product doctrine, deliberative process doctrine, and attorney-client privilege, are incorporated into FOIA by Exemption 5, 5 U.S.C. § 552(b)(5), which immunizes such material from disclosure. *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 481 (2d Cir.1999). Indeed, FOIA provides somewhat more expansive protection to attorney-client and work product materials than the rules of discovery, because although the rules protect documents covered by work product during litigation,

these documents are discoverable after a matter is dismissed with prejudice. These documents remain unavailable at any time through FOIA. *FTC v. Grolier, Inc.,* 462 U.S. 19, 28, 26, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). Exemption 7, 5 U.S.C. § 552(b)7, immunizes from discovery law enforcement materials that would not be available under the discovery rules of the agency from which the materials are sought, including, *e.g.,* witness statements, internal and external memoranda, correspondence, subpoenas, analyses, worksheets, and notes. *Title Guarantee Co. v. NLRB,* 534 F.2d 484, 491 (2d Cir.1976). Finally, law enforcement documents that comprise the substance of grand jury proceedings, and grand jury proceedings themselves, are

ment of the district court below and order the district court to release the portions of the ROI specified in this opinion. We exempt from disclosure certain information that implicates privacy interests so strong as to outweigh the public's interest in disclosure. Thus, the following sections of the ROI shall remain redacted: the redacted portions of page 3, MOI No. 1 and the names of all witnesses and third parties, including any identifying information. However, DOJ should turn over a less-redacted version of page 2, which still protects the identities of witnesses and third parties mentioned in the synopsis. The restriction on releasing the names and identifying information of witnesses and third parties extends to all parts of the ROI as redacted by the district court, including any mention in the narrative portions.

## CONCLUSION

We affirm the district court's findings regarding Exemptions 6 and 7(C) and the withholding of information regarding witnesses and third parties. However, we vacate the district court's ruling stemming from its balancing of Virtue's privacy interests against the public's interest in disclosure, and remand for further release of the ROI in accordance with this opinion.

not subject to disclosure under FOIA because they are considered to be "court documents," not "agency documents." *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 31 n. 10 (2d Cir.1981). Finally, as this report never was held under a protective order barring discovery, we need not consider the FOIA disclosure immunity for documents held under a protective order barring the future disclosure of the materials subject to the order. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 387, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980); *accord Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 n. 2 (D.C.Cir.1991).