**TPS, INC., Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE; Defense Logistics Agency, Defendants–Appellees.**

**No. 00–15144.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 9, 2003.

Filed June 3, 2003.

Daniel E. Kensinger, Riverside, CA, for the plaintiff-appellant.

Kevin V. Ryan, United States Attorney, and Abraham A. Simmons, Assistant United States Attorney, San Francisco, CA, for the defendants-appellees.

Before NOONAN, McKEOWN, and RAWLINSON, Circuit Judges.

McKEOWN, Circuit Judge.

Under the Freedom of Information Act ("FOIA"), a federal government agency must provide documents in "any form or format requested" that is "readily reproducible by the agency." 5 U.S.C. § 552(a)(3)(B). Regulations governing production of electronic data under FOIA dictate "a standard of reasonableness" and "business as usual" as guiding principles. 32 C.F.R. § 286.4(g)(2). The focus of this controversy is interpretation of "business as usual" in the context of records that are requested in a particular electronic format. We conclude that "business as usual" is not restricted solely to response practices under FOIA but instead encompasses the normal business of the agency. Because material issues of fact exist regarding whether the Department of Defense regularly generates documents in the format at issue here, we reverse the district court's grant of summary judgment in favor of the government.

## BACKGROUND

FOIA establishes the conditions under which government agencies "shall make available to the public information" and the methods by which agencies supply the information. 5 U.S.C. § 552. Under the 1996 amendments to FOIA, an agency responding to a FOIA request "shall provide the record in any form or format requested by the person if the record is *readily reproducible* by the agency in that form or

format." *Id.* at § 552(a)(3)(B) (emphasis added); *see also* Pub.L. No. 104–231 (Electronic Freedom of Information Act Amendments of 1996). The regulations applicable to electronic data further provide that

> when responding to FOIA requests for electronic data where creation of a record, programming, or particular format are questionable, Components should apply a standard of reasonableness. In other words, if the capability exists to respond to the request, and the effort would be a business as usual approach, then the request should be processed. However, *the request need not be processed where the capability to respond does not exist without a significant expenditure of resources, thus not being a normal business as usual approach.* As used in this sense, a significant expenditure of resources in both time and manpower, that would cause a significant interference with the operation of the Component's automated information system would not be a business as usual approach.

32 C.F.R. § 286.4(g)(2) (emphasis added).

▇▇ Total Procurement Systems, Inc. ("TPS"), a company that gathers and mar-

kets information about government procurement contracts, sent a FOIA request to the Defense Logistics Information Service ("DLIS"), a unit of the Department of Defense ("DOD") in Battle Creek, Michigan. TPS sought the transmission of two files in "zipped" format.[1] The DOD responded that it could provide the file in one of two other electronic media, but that providing zipped files was not "business as usual" as defined by 32 C.F.R. § 286.4(g)(2), and that it therefore was not required to provide files in that form. Because of its previous experience in receiving zipped files from the agency, TPS filed suit in federal court, asking the court to order the DOD to provide the files in the format requested. The DOD moved for dismissal or, in the alternative, summary judgment, on the grounds that the data were not "readily reproducible" under 5 U.S.C. § 552(a)(3)(B) in the format requested by TPS due to the "significant time and expense" required, and that the reproduction therefore was not "business as usual." In support of its motion, the DOD submitted a declaration from Jeffrey Greger, a supply systems analyst with the DLIS, who claimed that TPS's request was "unique."[2] The government also offered twelve supporting exhibits.[3]

---

1. A "zipped" file is a computer file that has been compressed. *Dictionary of Computer and Internet Terms* 421 (Barron's 5th ed. 1996). A compressed file can be stored in less space and transmitted using less bandwidth than a non-compressed file. *Microsoft Computer Dictionary* 102 (Microsoft Press 4th ed. 1999).

2. TPS objected to Greger's declaration as hearsay and contends on appeal that the district court failed to consider this objection. It is unclear from the hearing transcript whether the judge considered TPS's objection. Because Greger's declaration was based on personal knowledge and did not in fact contain hearsay, any failure to consider the issue was not prejudicial.

3. TPS claims that the district court failed to consider its objections to the government's exhibits for relevance, lack of probative value, hearsay, failure of authentication, and government interpretation of the documents. TPS did not explain the grounds for its objections or the application of its objections to particular exhibits, either in its brief on appeal or in the original objections. We can evaluate potential error only if we know the specific grounds for the objections and whether prejudice existed. *See Duran v. City of Maywood,* 221 F.3d 1127, 1130 (9th Cir.2000) (noting that erroneous evidentiary rulings may be reversed only if the error caused prejudice). Because TPS provides no foundation for its claims, it is impossible to link the objections to specific documents or to evaluate preju-

In response, TPS supplied two declarations stating that the DOD routinely provides files in zipped format. The first was from K.C. Chemelstrand, the president of a company providing services related to government information. Chemelstrand stated that since 1984, his company had received computer files from the DOD in the compressed format requested by TPS. The second declaration came from Richard Snyder, the president of TPS, who described TPS's procedures for gathering information and asserted that "TPS is only one (1) of thirteen (13) different businesses, that I am aware of, that receive 'zipped' files on a daily basis."

In analyzing the parties' proffered evidence, the district court reasoned that because neither of TPS's declarations indicated whether the zipped files had been obtained pursuant to a FOIA request or under a separate contract with the government, they did not answer whether sending zipped files was "business as usual" in the context of satisfying FOIA requests. The court accordingly struck the TPS declarations as insufficient and relied only on the evidence supplied by the DOD. Concluding that the information was not "readily reproducible" by the agency in zipped form, and that the compressed reproduction therefore was not "business as usual," the court granted summary judgment for the government.[4]

## STANDARD OF REVIEW

In the Ninth Circuit, we approach FOIA summary judgment appeals in a different manner from the typical de novo

review of a grant of summary judgment. We generally conduct a two-step review,[5] in which the first step is an inquiry into whether the district court's ruling is supported by an adequate factual basis. *See Fiduccia v. United States Dep't of Justice*, 185 F.3d 1035, 1040 (9th Cir.1999). If an adequate factual basis exists, we variously use de novo review or clear error review. *See Maricopa Audubon Soc'y v. United States Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir.1997) ("Our standard of review in FOIA cases is unclear. Recent cases in this circuit have applied different standards: some have reviewed the summary judgment de novo, while others have decided only whether the district court's ruling was clearly erroneous." (internal citations omitted)).

Because the threshold issue before us on this appeal is a legal interpretation of "business as usual," and not a review of the contents of the document itself, de novo review is appropriate. *See Monjaraz–Munoz v. INS*, 327 F.3d 892 (9th Cir. 2003) ("Questions of law are reviewed de novo...."). Once the legal issue is resolved, it falls to the district court to benchmark the evidence against the legal standard. Because this case does not involve deference to factual findings, de novo review is consistent with our prior cases.

## DISCUSSION

The question before us is interpretation and application of the "business as usual" standard in the regulations related to electronic data. The district court's restrictive

---

dice. We therefore treat this claim as forfeited.

4. The district court ruled on requests for two separate files and found that the first one was administratively unexhausted. TPS does not appeal that ruling. Only the file known as the H6 file is at issue in this appeal.

5. The Second, Sixth, Eighth, Tenth, and D.C. Circuits, by contrast, employ a de novo standard of review in FOIA cases. *See Missouri ex rel. Garstang v. United States Dep't of the Interior*, 297 F.3d 745, 749 n. 2 (8th Cir.2002) (listing the circuits' standards of review and illustrative cases); *Perlman v. United States Dep't of Justice*, 312 F.3d 100, 104 (2d Cir. 2002).

reading of this phrase provided the foundation for both its evidentiary ruling excluding TPS's declarations and its ultimate conclusion in favor of the DOD. The court determined that the two TPS declarations did not address whether the parties received zipped files in the context of FOIA requests or pursuant to separate contracts with the government. The court therefore granted the government's motion for summary judgment because "[t]he record reflects that, under FOIA, the transmission of 'zipped' files or the compressing of files to be transmitt[ed] electronically is not common; indeed, the record reflects the agency, *under FOIA,* do[es] not produce zipped files. Production to plaintiff by this manner would not be business as usual for the agency" (emphasis added).

## I. LEGAL STANDARD—"BUSINESS AS USUAL"

■ The language of FOIA does not support a reading that distinguishes between "business as usual" for FOIA requests and "business as usual" for activities that are part of the agency's business. FOIA requires that a government agency supply documents in any format requested as long as the information is "readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). Under the regulations, a FOIA request must be processed if "the capability exists to respond to the request." 32 C.F.R. § 286.4(g)(2). The statute, on its face, requires that the agency satisfy a FOIA request when it has the capability to readily reproduce documents in the requested format. We see no reason to give FOIA the narrow reading crafted by the district court. Indeed, it would seem anomalous for an agency that is regularly reproducing documents in a particular format as part of its ongoing business to be able to shield itself from similar production under FOIA.

■ The regulations also specify that an agency need not process requests that would involve a "significant interference with the operation" of the agency's information system. *Id.* The language suggests that these provisions are intended simply to preclude requestors from forcing unusual requests that would impose unreasonable or additional burdens on an agency's data system, personnel, or resources. When an agency already creates or converts documents in a certain format—be it for FOIA requestors, under a contract, or in the ordinary course of business—requiring that it provide documents in that format to others does not impose an unnecessarily harsh burden, absent specific, compelling evidence as to significant interference or burden.

This interpretation is bolstered by the statute's history and purpose. Congress prefaced the 1996 FOIA amendments with a statement of Findings and Purposes:

(a) Findings. The Congress finds that

(1) the purpose of [FOIA] ... is to require agencies of the Federal Government to make certain agency information available for public inspection and copying and to establish and enable enforcement of the right of any person to obtain access to the records of such agencies, subject to statutory exemptions, for any public or private purpose;

. . .

(5) Government agencies increasingly use computers to conduct agency business and to store publicly valuable agency records and information; and

(6) Government agencies should use new technology to enhance public access to agency records and information.

Pub. L. No. 104–231 at *2 (Electronic Freedom of Information Act Amendments of 1996). The statements reflect a Congressional choice to expand, rather than narrow, the agencies' obligations under FOIA and to encourage government agencies to use advancing computer technolo-

gy—such as zipping files—not only to conduct agency business and store data but also "to enhance public access" to records.

In addition, the circuits agree that Congress' intent is best realized by interpretations of FOIA that favor disclosure over secrecy. *See, e.g., Perlman v. United States Dep't of Justice,* 312 F.3d 100, 104 (2d Cir.2002) ("The [FOIA] adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." (citation and internal quotation marks omitted)); *Maricopa Audubon Soc'y,* 108 F.3d at 1085 (noting that FOIA "mandates a policy of broad disclosure of government documents") (quoting *Church of Scientology v. Dep't of the Army,* 611 F.2d 738, 741 (9th Cir.1979)); *Detroit Free Press, Inc. v. Dep't of Justice,* 73 F.3d 93, 95 (6th Cir. 1996) ("By enacting the FOIA, Congress evidenced a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." (citation and internal quotation marks omitted)). Although these cases speak in terms of *whether* to disclose rather than the *format* in which to disclose, their presumption in favor of public access to information suggests that we should invoke the same presumption in requiring disclosure in the requested format so as to "enhance public access to agency records."

## II. Factual Inquiry

■ The DOD does not dispute that it has the technical "capability," *see* 32 C.F.R. § 286.4(g)(2), to respond to the format request. Whether the DOD in fact does provide zipped files as a "normal business as usual approach," *id.,* is impossible to resolve as a matter of law, and the district court's determination of this issue on summary judgment was in error, primarily because it invoked a restrictive, incorrect legal standard.

On a motion for summary judgment, we must view the evidence in the light most favorable to the non-moving party. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). A review of the two TPS declarations highlights the factual issue: whether, as TPS's declarations indicate, zipped files are part of the DOD's usual mode of computerized transmission, or whether, as the government argues, zipped files are not produced in the normal course of business and are burdensome to create. For example, Chemelstrand stated:

I am familiar with the process of compressing computerized files and the transmitting of compressed computerized files over telecommunication lines. My company has been receiving compressed computer files from the U.S. Government via ... DAASC [the Defense Automated Addressing System Center], in Dayton, Ohio since 1994. These compressed computer files originated in the Defense Information System Agency ["DISA"], in Columbus, Ohio and were transmitted to DAASC for transmission to my company.

The district court dismissed the declaration as insufficient because "it really doesn't establish whether the information in a compressed form was provided to [Chemelstrand] under FOIA or was provided to him under a separate contract that he had with the agency." The court resolved this factual uncertainty by deciding "that [Chemelstrand's] company does receive information under a contract and not under FOIA."

This determination was in error. Chemelstrand's declaration was sufficient to raise a factual issue regarding the DOD's ability to transmit zipped files and its practice of regularly providing such files, as Chemelstrand's company and TPS deal with the same DOD subagencies in obtain-

ing electronic files. Even if Chemelstrand's company did receive the zipped files under a non-FOIA-related contract, that fact is not dispositive of whether the DOD's provision of the files in zipped format is "business as usual." Chemelstrand's assertions therefore raised a factual question that cannot be resolved in summary judgment.

The declaration from Richard Snyder, TPS's president, was similarly relevant to the determination of the DOD's "business as usual" practices, and the court erred in applying its limited reading of the "business as usual" standard. Snyder stated that he had received a notice from the DOD informing him that all FOIA requests transferred over electronic lines were to be zipped; he further stated that that notice, rather than TPS's own requirements, was the impetus for his requesting files in zipped format. Snyder also declared that "[t]he zipping and electronic transfer of a computer file is a common occurrence within most U.S. Government Agencies .... The activity of transferring and maintaining computer files is the main role of DAASC." The district court concluded that "Mr. Snyder's declaration ... fails because, again, it doesn't answer the questions whether that information was provided in accordance with the contract and not under FOIA."

As with the Chemelstrand declaration, however, Snyder "set forth specific facts" regarding the frequency of the DOD's supplying zipped files and therefore "show[ed] ... a genuine issue for trial." Fed. R.Civ.P. 56(e). A fact-finder construing the evidence in the light most favorable to TPS could thus conclude that the DOD's provision of the information in zipped format was "business as usual." Put another way, viewing the evidence in the light most favorable to TPS, one cannot conclude as a matter of law that the DOD's production of computer files in zipped format would not be "a business as usual approach" as outlined in the statute and regulations. Summary judgment was thus inappropriate.

CONCLUSION

We resolve as a matter of law that FOIA does not restrict the "business as usual" inquiry to whether a government agency regularly reproduces documents in a specified format solely for FOIA requests. Instead, the relevant inquiry is whether, in general, the format is one that is "readily reproducible" by the agency. In evaluating reproducibility, the agency should employ a standard of reasonableness that is benchmarked against the agency's "normal business as usual approach" with respect to reproducing data in the ordinary course of the agency's business.

**REVERSED AND REMANDED.**