**Alexander WOOD, Plaintiff–Appellant–Cross–Appellee,**

v.

**FBI, Dept of Justice, Defendants–Appellees–Cross–Appellants.**

**Docket Nos. 05–0795–CV(L), 05–0963–CV(XAP).**

United States Court of Appeals, Second Circuit.

Argued: Sept. 21, 2005.

Decided: Dec. 6, 2005.

---

J. O'Connor, United States Attorney for the District of Connecticut, Peter D. Keisler, Assistant Attorney General, Leonard Schaitman, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington D.C., on the brief), for Defendants–Appellees–Cross–Appellants.

Before: JACOBS and SOTOMAYOR, Circuit Judges, BRIEANT, District Judge.[*]

SOTOMAYOR, Circuit Judge:

Plaintiff-appellant-cross-appellee Alexander Wood ("Wood"), a reporter for the *Journal Inquirer* of Manchester, Connecticut, brought this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of a prosecution memorandum (the "Radek Memo") prepared by two trial attorneys in the Public Integrity Section of the Department of Justice ("DOJ") and other documents relating to the investigation of Connecticut Federal Bureau of Investigation ("FBI") agents accused of lying in affidavits supporting arrest warrant applications. On the parties' motions for summary judgment, the United States District Court for the District of Connecticut (Arterton, J.) held that the Radek Memo was work-product and therefore could be withheld by DOJ under Exemption 5 to FOIA, 5 U.S.C. § 552(b)(5). *See Wood v. FBI*, 312 F.Supp.2d 328, 341–45 (D.Conn.2004). The district court also held that the names and identifying information of the FBI personnel who investigated the Connecticut agents prior to December 30, 1997, when DOJ decided not to criminally prosecute the agents, could be withheld under Exemption 7(C) to FOIA, § 552(b)(7)(C). *Id.* at 349. With respect to records creat-

Alexander Wood, Manchester, CT, Pro Se.

John S. Koppel, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C., (Kevin

---

[*] The Honorable Charles L. Brieant, United States District Judge for the Southern District of New York, sitting by designation.

ed after December 30, 1997, pursuant to an administrative disciplinary investigation, however, the district court held that neither Exemption 7(C) nor Exemption 6, § 552(b)(6), the exemption for information contained in personnel, medical, or similar files, applied and ordered the names of the government employees disclosed. *Id.* at 350. We hold that (1) the Radek Memo was work-product that was not adopted by DOJ in a final opinion and was properly withheld under Exemption 5; and (2) disclosure of the names and identifying information of the government investigators in the administrative investigation files compiled after December 30, 1997 constitutes a clearly unwarranted invasion of privacy and therefore could be withheld by the FBI under Exemption 6. We also reject Wood's assertions that the district court abused its discretion in its rulings on discovery and related matters.

## BACKGROUND

The facts are fully set forth in the district court's opinion, *Wood,* 312 F.Supp.2d at 335–37, and we summarize them only briefly here. In July 1996, Gregory B. Dillon, an inspector with the Connecticut Division of Criminal Justice assigned to the Connecticut Fugitive Task Force, a joint task force with the FBI, complained to his superiors that FBI agents on the Task Force, including a supervising agent, had filed affidavits for arrest warrants that contained false or misleading information. Soon thereafter, DOJ's Public Integrity Section launched an investigation into the agents' alleged misconduct. Two Public Integrity Section trial attorneys, James Cooper and John Scott, prepared a memorandum dated December 2, 1997, for Lee Radek, the Section Chief, regarding possible criminal prosecution of the agents. On December 30, 1997, Joseph Gangloff, then Principal Deputy Chief of the Public Integrity Section, declined criminal prosecution

as acting Section Chief in Radek's absence, noting that decision on the face of the memo.

Despite the decision not to proceed with criminal prosecution, the FBI's Office of Professional Responsibility ("OPR") began an administrative investigation and disciplined the agents for their misconduct in connection with the arrest warrant affidavits. At least one agent received a five-day suspension and was put on probation for six months, although this sanction was reduced to a letter of censure on administrative appeal.

Wood filed his FOIA request with the FBI and DOJ in November 1998, seeking all documents relating to the investigation of the agents' misrepresentations. DOJ ultimately located two documents responsive to the request, but withheld one, the Radek Memo, pursuant to FOIA Exemptions 5, 6 and 7(C) and (D). Wood filed an administrative appeal of this partial denial of his FOIA request, which was denied.

For its part, the FBI ultimately located and released 447 non-duplicate pages of documents in response to Wood's request. The district court described these documents as including:

> reports of interviews undertaken in the course of the investigation, reports of factual findings by the investigators, analyses of relevant law, correspondence of various officials within the FBI and DOJ regarding the status of the investigation, the decision from the Adjudication Unit of the FBI's Office of Professional Responsibility, the letters to the accused special agents setting forth the administrative discipline ordered, the appeal of the special agent who received a five day suspension, and the decision, on appeal, reducing the five day suspension to a letter of censure.

*Id.* at 336–37. The documents "revealed the names of the higher-level officials responsible for the investigations and the ultimate decisions regarding the accused agents, but redacted the names and other information identifying other employees of the FBI and DOJ involved in the investigation" pursuant to Exemptions 6 and 7(C).[1] *Id.* at 337.

On November 20, 2002, Wood filed this suit challenging the withholding of the Radek Memo and the redaction of information identifying the FBI and DOJ personnel involved in the investigation of the accused agents. Wood moved for partial summary judgment, for a continuance to conduct discovery, and to strike part of a DOJ attorney's declaration. DOJ also moved for summary judgment. The district court granted in part and denied in part each party's motion for summary judgment and denied Wood's motions for discovery and to strike.

On appeal, Wood contends that the district court erred in holding that the Radek Memo could be withheld under Exemption 5 because DOJ had adopted and incorporated the Memo by reference in its final decision not to prosecute the agents on criminal charges. He also continues to press on appeal arguments presented to the district court regarding discovery and other procedural matters.

DOJ and the FBI cross-appeal the district court's order requiring them to disclose the names and identifying information of the government employees who investigated the agents' misconduct in records compiled after December 30, 1997, asserting that the district court erred in finding that Exemption 6 applies only to personal information relating to the subject of an investigation contained in a personnel, medical, or similar file.

## DISCUSSION

 This Court reviews *de novo* a district court's grant of summary judgment in a FOIA case. *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 355 (2d Cir.2005). We review the district court's rulings regarding discovery and related procedural matters for abuse of discretion. *Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 813 (2d Cir.1994).

 FOIA, 5 U.S.C. § 552, was enacted "to promote honest and open government," *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 478 (2d Cir.1999), and "to ensure public access to information created by the government in order 'to hold the governors accountable to the governed.'" *Tigue v. U.S. Dep't of Justice,* 312 F.3d 70, 76 (2d Cir.2002) (quoting *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978)). "FOIA strongly favors a policy of disclosure and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions

---

1. The district court repeated its finding that DOJ and the FBI had disclosed the names of the relevant decision-makers and "the higher level officials providing information and recommendations to the decision-makers" later in the opinion, *see Wood,* 312 F.Supp.2d at 349 n. 9. In another section, however, the district court noted that the "withholding of the names of some of the DOJ and FBI employees involved in the investigation *and decision-making* process does not meet the Exemption 6 threshold," perhaps suggesting that

not all of the decision-makers' names were released. *Id.* at 350 (emphasis added). This apparent confusion as to whether the names of the higher level officials have been released may have been caused by DOJ's improper redaction of some names of decision-makers and higher-level officials in the documents. DOJ represents in its reply brief that it does not seek to withhold those names and will release the wrongfully withheld names. We so assume.

set forth in the Act." *Nat'l Council of La Raza*, 411 F.3d at 355 (internal citation omitted). We construe FOIA exemptions narrowly, resolving all doubts in favor of disclosure. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001); *Grand Cent. P'ship*, 166 F.3d at 478. The government bears the burden of establishing that any claimed exemption applies. *Nat'l Council of La Raza*, 411 F.3d at 356; *Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 105 (2d Cir.2002), *vacated*, 541 U.S. 970, 124 S.Ct. 1874, 158 L.Ed.2d 464 (2004), *reaffirmed*, 380 F.3d 110 (2d Cir.2004).

## I. The Radek Memo

■ At issue in Wood's appeal is Exemption 5 to FOIA, which protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption encompasses traditional discovery privileges, such as the attorney-client and work-product privileges. *Tigue*, 312 F.3d at 76; *see also Klamath Water Users Protective Ass'n*, 532 U.S. at 8, 121 S.Ct. 1060 (explaining that Exemption 5 "incorporat[es the] civil discovery privileges" including "the privilege for attorney work-product and what is sometimes called the 'deliberative process' privilege"). It also protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions policies are formulated."

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975). Exemption 5 "is based on 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Nat'l Council of La Raza*, 411 F.3d at 356 (quoting *Klamath Water Users Protective Ass'n*, 532 U.S. at 8–9, 121 S.Ct. 1060). Not every document that meets the requirements of Exemption 5, however, may be withheld. An agency must disclose a pre-decisional memorandum "if the agency has chosen 'expressly to adopt or incorporate by reference [a] ... memorandum previously covered by Exemption 5 in what would otherwise be a final opinion.'" *Id.* (quoting *Sears, Roebuck & Co.*, 421 U.S. at 161, 95 S.Ct. 1504) (alterations in original).

Woods concedes that, by its terms, the Radek Memo is attorney work-product covered by Exemption 5.[2] Nevertheless, he argues that the Radek Memo may not be withheld by DOJ under Exemption 5 because DOJ expressly adopted or incorporated the Memo by reference in its final decision to decline prosecution.

The district court held that the Radek Memo was work-product and that Wood's claim was unavailing because the doctrine of adoption and incorporation by reference did not apply to attorney work-product. *Wood*, 312 F.Supp.2d at 342–43. It further held that even if the exception applied to such work-product, DOJ did not adopt or incorporate the Radek Memo by refer-

---

2. We do not understand Wood's brief to assert that the Radek Memo would constitute a final agency opinion absent express adoption or incorporation. To the extent that it does, this claim is without merit. *See A. Michael's Piano, Inc. v. Fed. Trade Comm'n*, 18 F.3d 138, 146–47 (2d Cir.1994) (holding that "reports and recommended action with respect to the status of an investigation submitted

before any final decision is made ... qualify as documents prepared in anticipation of litigation" and therefore are attorney work-product); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 185–87, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975) (holding that advisory reports by individuals without authority to take final agency action are pre-decisional).

ence in its final decision. *Id.* at 343–44. The district court's opinion in this case was issued prior to this Court's recent decision clarifying the doctrine of adoption and incorporation in *National Council of La Raza v. United States Department of Justice,* 411 F.3d 350 (2d Cir.2005). Because we hold that, under the reasoning of *National Council of La Raza,* DOJ did not adopt or incorporate the Radek Memo by reference, we do not reach the question of whether this doctrine would require the disclosure of otherwise exempt attorney work-product.

In *National Council of La Raza,* plaintiffs sought the disclosure of a memorandum authored by DOJ's Office of Legal Counsel ("OLC") that opined that federal law permitted state and local law enforcement officials to enforce the civil provisions of the Immigration and Nationality Act. *Id.* at 353–54. This opinion represented a change of policy for DOJ, which, in 1996, had published a memorandum from the OLC concluding that state and local authorities were preempted from detaining individuals based solely on the suspicion that they had violated the civil provisions of the Act. *Id.* at 353. On the basis of "the repeated references to the OLC Memorandum made by the Attorney General and his high-ranking advisors, the substance of their comments, and the way in which their comments were used—that is, to assure third parties as to the legality of the actions the third parties were being urged to take," we held that DOJ had expressly adopted the memorandum into its new policy regarding state and local enforcement of civil immigration laws. *Id.* at 357. In so holding, we cautioned that an agency does not adopt or incorporate by reference a pre-decisional memorandum where it only adopts the memorandum's conclusions. "Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analy-

sis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference." *Id.* at 358.

In the instant case, Gangloff noted on the face of the memo "Declined JG for LJR 12/30/97." This brief notation does not indicate that DOJ adopted the reasoning of the Radek Memo. Neither Gangloff nor any other high-level DOJ officials made any public references to the Radek Memo. There is no evidence in the record from which it could be inferred that DOJ adopted the reasoning of the Memo, and, as we explained in *National Council of La Raza,* this failure is fatal. *See id.* at 359 ("[W]here an agency, having reviewed a subordinate's non-binding recommendation, makes a 'yes or no' determination without providing any reasoning at all, a court may not infer that the agency is relying on the reasoning contained in the subordinate's report.") (citing *Casad v. U.S. Dep't of Health & Human Servs.,* 301 F.3d 1247, 1252–53 (10th Cir.2002) (holding that mere adoption of a report's recommendations is not sufficient to establish express adoption or incorporation by reference)); *see also Tigue,* 312 F.3d at 81 (holding that two minor public references to a pre-decisional document "cannot be said to be an express adoption or incorporation"). Hence, even assuming that the doctrine of adoption and incorporation by reference would apply to attorney work-product, a point on which we express no view, there was no such adoption or incorporation here and DOJ properly withheld the Radek Memo under Exemption 5.

▮▮▮▮ Wood's contentions that the district court erred in denying his discovery requests and motion to strike do not alter this conclusion. A district court has broad discretion to manage pre-trial discovery and we review its decisions on these matters only for abuse of discretion. *Grand*

*Cent. P'ship*, 166 F.3d at 488. "[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face," and a district court may forgo discovery and award summary judgment on the basis of submitted affidavits or declarations. *Carney*, 19 F.3d at 812. The district court here found that the declarations submitted by the government were sufficient on their face because they were detailed, nonconclusory and submitted in good faith. *See Grand Cent. P'ship*, 166 F.3d at 488–89; *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C.Cir.1991). Wood's assertion that discovery should nonetheless have been permitted because individuals in the FBI's Office of Professional Responsibility ("OPR") may have read the Radek Memo[3] is conjectural and the district court did not abuse its discretion in finding this assertion insufficient to overcome the government's good faith showing.[4] To the extent that Wood continues to press other arguments for discovery relating to the Radek Memo that were rejected by the district

court, we reject these arguments as well for the reasons stated by the district court.

## II. Exemption 6

■ Wood also requested production of the names and other identifying information of the government personnel that had been redacted in the post-December 30, 1997 files relating to the administrative investigation of the accused agents.[5] The FBI sought to withhold the employee names under Exemption 6 to FOIA, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The district court concluded that the "FBI's withholding of the names of some of the DOJ and FBI employees involved in the investigation and decision-making process does not meet the Exemption 6 threshold" because the government employees were not the subjects of the investigation and thus the files "reveal no detailed personal information about the investigators, as would be present in personnel, medical, or similar files." *Wood*, 312

---

**3.** Wood argues the district court did not understand his argument that DOJ incorporated the Memo into a final opinion by allowing FBI agents to read it as part of the disciplinary process and, in consequence, abused its discretion as a matter of law. Even assuming that the district court misunderstood this argument, we would not disturb its decision to deny discovery in this case. As noted, the district court was well within its discretion in finding that there was no tangible evidence that any employee in the OPR read the Radek Memo. If there was any misunderstanding on this ground, it was harmless.

**4.** On the basis of § 9–27.270 of the United States Attorney's Manual, which provides that when a government attorney declines prosecution, he or she should ensure that the decision in adequately communicated to the investigating agency and reflected in the office files, Wood moved to alter or amend the judgment under Rule 59(e). Because the district

court did not commit error or a manifest injustice in holding that the Radek Memo was attorney work-product, *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir.2004), we find no abuse of abuse of discretion in the denial of Wood's motion.

**5.** DOJ also sought to withhold the documents pursuant to Exemption 7(C), which applies to private information compiled for law enforcement purposes. The district court held that the files compiled after December 30, 1997 could not be withheld pursuant to Exemption 7(C), because DOJ had already declined to proceed with criminal prosecution. *Wood*, 312 F.Supp.2d at 346. Although the government notes its disagreement with this conclusion, it does not raise this ground on appeal and so the question of whether Exemption 7(C) applies to administrative records created after the government declined to pursue criminal prosecution is not before us.

F.Supp.2d at 350. It therefore ordered the names disclosed. We disagree with the district court's interpretation of Exemption 6 and hold that, as a threshold matter, Exemption 6 applies to any personal information contained in files similar to personnel or medical files, such as administrative investigative records.

■ Exemption 6 is intended to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). Whether the names and other identifying information about government investigators may be withheld under Exemption 6 is a two-part inquiry. First, we must determine whether the personal information is contained in a file similar to a medical or personnel file. In considering whether the information is contained in a "similar" file, we ask whether the records at issue are likely to contain the type of personal information that would be in a medical or personnel file. *Id.* at 601, 102 S.Ct. 1957 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 372, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1975)). At the second step of the analysis under Exemption 6, we balance the public's need for the information against the individual's privacy interest to determine whether the disclosure of the names would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991).

### A. The Administrative Investigation Records are "Similar Files"

Personnel and medical files generally contain a variety of information about a person, such as "place of birth, date of birth, date of marriage, employment history, and comparable data." *Washington Post Co.*, 456 U.S. at 600, 102 S.Ct. 1957. Although these details are not considered intimate, the disclosure of this information is subject to the balancing analysis under Exemption 6. *Id.* at 600–01, 102 S.Ct. 1957. Such files, however, are also likely to contain information about an individual's spouse and children, including their birth dates, social security numbers, and other identifying information. Whether this information may be withheld plainly would be the proper subject of the balancing analysis under Exemption 6 as well. *See Simpson v. Vance*, 648 F.2d 10, 17 (D.C.Cir.1980) (holding that marital status and names of spouses of foreign service personnel were properly withheld under Exemption 6), *abrogated on other grounds, Washington Post Co.*, 456 U.S. 595, 102 S.Ct. 1957, 72 L.Ed.2d 358.

■ Similarly, administrative investigative files will likely contain information about both the subject of the investigation and third parties such as witnesses. Although the files may not contain personal information about a particular witness beyond his or her name and identifying information such as a job title, the disclosure of a witness's identity would be subject to the Exemption 6 balancing test. *See Perlman*, 312 F.3d at 106. In *Perlman*, we concluded that a report of investigation involving improper conduct by the former general counsel of the former Immigration and Naturalization Service ("INS") was a "similar file" under Exemption 6 because it was a "detailed Government record" containing identifying information about the subject of the investigation. *Id.* at 105–06. Because we held that both Exemptions 6 and 7(C) applied to the document, we employed the balancing test in Exemption 7(C), which is broader than that for Exemption 6. We applied that test to information about the subject of the report, the former INS general counsel, and to witnesses and

third parties identified in the report. *Id.* at 106. Notwithstanding our application of the Exemption 7(C) balancing test, we did not suggest that Exemption 6 would not apply to the third-party witnesses and investigative personnel listed in the file simply because they were not the subjects of the records.[6] *See FLRA v. U.S. Dep't of Veteran's Affairs,* 958 F.2d 503, 509 (2d Cir.1992) ("That Exemptions 6 and 7(C) provide differing levels of protection once a privacy interest is implicated is irrelevant to determining the sort of privacy interest that must first be shown before protection is afforded at all."); *see also Lakin Law Firm, P.C. v. Fed. Trade Comm'n,* 352 F.3d 1122, 1123–24 (7th Cir. 2003) (holding without discussion that Exemption 6 applies to the identities of individuals who made complaints to the Federal Trade Commission although the authors of the complaints were not the subjects of the files); *Office of Capital Collateral Counsel, Ne. Region of Fla. v. Dep't of Justice,* 331 F.3d 799, 804 (11th Cir.2003) (citing *Perlman* and holding that the names of third parties identified in records considered "similar files" may be withheld under Exemption 6 subject to the balancing analysis); *Strout v. U.S. Parole Comm'n,* 40 F.3d 136, 139 (6th Cir.1994) (holding that the agency had properly redacted the names of individuals who had written to the parole commission under Exemption 6 without discussion of the fact that the file at issue was about the parole applicant).

The records at issue here were collected in the course of an administrative investigation of targeted individuals. As in *Perlman,* the records at issue are highly detailed and contain personal information about the subjects of the investigation— the Connecticut FBI agents accused of misrepresenting search warrant information. *See Wood,* 312 F.Supp.2d at 336–37. They also contain private information about other individuals, particularly witnesses. To the extent that the district court interpreted Exemption 6˙ to apply only to personal information relating to the subject of an investigation, this was error. For the reasons discussed, any personal information contained in files similar to medical and personnel files, including the type of highly detailed records found in investigative files, is subject to the balancing analysis under Exemption 6.

## B. Exemption 6 Balancing Test

Although the personal information at issue here satisfies the first step of the Exemption 6 inquiry, it may be withheld only if the disclosure of the investigators' identities would result in a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To make this determination, a court must balance the public's interest in disclosure against the individuals' privacy interests. *Rose,* 425 U.S. at 372, 96 S.Ct. 1592; *Hopkins v. U.S. Dep't*

---

**6.** The Supreme Court has held that a "similar file" includes any "detailed Government records on an individual which can be identified as applying to that individual." *Washington Post Co.,* 456 U.S. at 602, 102 S.Ct. 1957 (citation and quotation marks omitted). Although the use of the word "on" could, by itself, suggest that the individual whose name is being withheld must be the subject of the report, this is but one description of the information to which Exemption 6 applies. In the same opinion, the Court stated that Exemption 6 covers "information which applies to a particular individual." *Id.* at 601, 102 S.Ct. 1957. It also counseled that the "personnel, medical, and similar files" aspect of the exemption is not meant to serve as a limiting factor. *Id.* at 600, 102 S.Ct. 1957. Instead, the Supreme Court explained, "the 'clearly unwarranted invasion of personal privacy' language ... holds Exemption 6 'within bounds.'" *Id.* (citing S.Rep. No. 813, 89th Cong., 1st Sess., 9).

*of Hous. & Urban Dev.*, 929 F.2d 81, 86–87 (2d Cir.1991). The privacy side of the balancing test is broad and "encompasses all interests involving 'the individual's control of information concerning his or her person.'" *Hopkins*, 929 at 87 (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). On the other side of the balance, the relevant interest is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355–56, 117 S.Ct. 795, 136 L.Ed.2d 825 (1997) (internal citation and quotation marks omitted).

Because the district court concluded that Exemption 6 did not apply, it did not engage in this second step, noting only that "[t]he mere name of an agency employee involved in an investigation but not the subject of the investigation" did not implicate any privacy interest worthy of protection. *Wood*, 312 F.Supp.2d at 350. We disagree.

Names and other identifying information do not always present a significant threat to an individual's privacy interest. *See Ray*, 502 U.S. at 177, 112 S.Ct. 541 n. 12. Instead, whether the disclosure of names of government employees threatens a significant privacy interest depends on the consequences likely to ensue from disclosure. *Id.* The government contends that disclosure of the investigators' identities "could subject them to harassment or unofficial questioning in the conduct of their official duties or private lives and could lead to the attempted compromise of these employees." It asserts further that the fact that the investigators at issue are public servants should not subject them to

harassment simply for performing their jobs as ordered.

This Court and others have recognized that government investigative personnel may be subject to harassment or embarrassment if their identities are disclosed. *See Halpern v. FBI*, 181 F.3d 279, 297 (2d Cir.1999) (holding that FBI agents and other government employees have an interest against the disclosure of their identities to the extent that disclosure might subject them to embarrassment or harassment in their official duties or personal lives); *Massey v. FBI*, 3 F.3d 620, 624 (2d Cir.1993) (same); *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir.1978) (holding that the public identification of FBI agents "could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives"); *see also New England Apple Council v. Donovan*, 725 F.2d 139, 142 (1st Cir.1984) (collecting cases). This interest against possible harassment and embarrassment of investigative personnel raises a measurable privacy concern that must be weighed against the public's interest in disclosure.

In determining the public's interest in disclosure of a government employee's identity, we have looked to several factors, including the employee's rank and whether the information sought sheds light on government activity. *See Perlman*, 312 F.3d at 107 (applying a five-factor test where the government employee is the subject of an investigation). Significantly, the employees here are of relatively low rank and the identities of the decision-makers have already been disclosed.[7] Moreover, revealing the identities of the investigators assigned to the case would add little to the public's understanding of how the FBI's OPR performed its duties given that the

7. *See supra* note 1.

existence of the internal investigation and its outcome has been disclosed. *Cf. U.S. Dep't of Veteran's Affairs*, 958 F.2d at 512 (disclosure of employee names is not related to informing the public about an agency's actions); *Hopkins*, 929 F.2d at 88 (noting that disclosing the names of individual employees would not illuminate how the Housing and Urban Development Agency enforced the Davis–Bacon Act). In short, the public's interest in knowing the identities of the employees assigned to investigate the agents for purposes of administrative discipline is minimal at best and is insufficient to overcome the employees' interest in preventing the public disclosure of their names.

Wood contends that the public's interest is heightened in the case of an internal investigation because of public cynicism and the possibility of institutional bias on the part of the investigators. As evidence of this bias, Wood notes that the records compiled as part of the administrative process discussed only the standard for perjury, not FBI Director Freeh's "bright-line" policy that employees who lied under oath would be dismissed. Moreover, Wood contends, the OPR's Adjudication Unit treated as immaterial one of the misrepresentations that he thought was material.

As an initial matter, Wood does not cite any case in support of his assertion that internal government investigations warrant additional scrutiny, and the Supreme Court has held that a presumption of legitimacy attends government actions that may not be overcome on the basis of unsupported allegations. *See Ray*, 502 U.S. at 179, 112 S.Ct. 541; *cf. Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004) (citing *Ray* and holding, pursuant to Exemption 7(C), that "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred"). Wood's evidence of government wrongdoing is unpersuasive; his disappointment with the outcome of the adjudication is not evidence that the investigators were negligent or biased in the performance of their duties.

More importantly, the names of the government investigators would not reveal anything about this supposed bias. Assuming that there was bias in the investigation, it would be reflected in the actions taken or not taken by the FBI or DOJ. Indeed, Wood points to various deficiencies with the outcome of the investigation, asserting that the OPR did not consider material certain misrepresentations that he thought were material. Given that the FBI has already revealed the substance of the investigation and subsequent adjudication, knowledge of the names of the investigators would add little, if anything, to the public's analysis of whether the FBI dealt with the accused agents in an appropriate manner.

Because we find the public interest to be negligible, the investigators' interests in preventing the public disclosure of their identities substantially outweighs it. Consequently, such disclosure would be a "clearly unwarranted invasion of privacy" and the names were properly withheld by the FBI pursuant to Exemption 6 to FOIA.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part and the case is REMANDED to the district court to enter judgment for the defendants.