06-5352-cv
Associated Press v. United States Department of Defense

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: May 5, 2008)

Docket No. 06-5352-cv

Decided: January 5, 2009)

_____

ASSOCIATED PRESS,

*Plaintiff-Appellee,*

*-v.-*

UNITED STATES DEPARTMENT OF DEFENSE,

*Defendant-Appellant.*

_____

BEFORE:          WINTER, HALL, *Circuit Judges*, KRAVITZ, *District Judge.*[*]

_____

The Department of Defense ("DOD") appeals from a judgment of the United States

District Court for the Southern District of New York (Rakoff, *J.*) granting the Associated Press

("AP") summary judgment in large part and ordering DOD to disclose (1) detainee identifying

information contained in records of DOD's investigations of detainee abuse at Guantanamo

Naval Bay in Cuba by United States military personnel and by other detainees, and (2)

identifying information of detainees' family members contained in personal letters to two

detainees submitted to an Administrative Review Board, based on the district court's finding that

_____

[*] The Honorable Mark R. Kravitz, United States District Court Judge for the District of
Connecticut, sitting by designation.

1

the privacy exemptions in the Freedom of Information Act ("FOIA") did not apply. We hold that the detainees and their family members do have a measurable privacy interest in their identifying information and that the AP has failed to show how the public interest would be served by disclosure of this information. We conclude that the identifying information is exempt from disclosure under the FOIA privacy exemptions.

REVERSED.

_____

ELIZABETH WOLSTEIN, Assistant United States Attorney for the Southern District of New York for Michael J. Garcia, United States Attorney (James L. Cott, Sarah S. Normand, *of counsel*), New York, NY, *for Defendant-Appellant*.

DAVID A. SCHULZ (Adam J. Rappaport, *on the brief*), Levine Sullivan Koch & Schulz, LLP, New York, NY, *for Plaintiff-Appellee*.

_____

HALL, *Circuit Judge*:

The Department of Defense ("DOD") appeals from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, J.) granting the Associated Press ("AP") summary judgment in large part and ordering DOD to disclose identifying information of Guantanamo Bay detainees contained in DOD records documenting allegations of abuse by military personnel and by other detainees, and identifying information of family members contained in personal letters sent to two detainees and submitted by those detainees to Administrative Review Boards ("ARB")[1] pursuant to the Freedom of Information Act ("FOIA"),

_____

[1] The Administrative Review Board was established to assess annually the need to continue to detain each enemy combatant during the course of the current and ongoing hostilities. This administrative review permits each enemy combatant in the control of DOD at Guantanamo Bay Naval Base to explain why he is no longer a threat to the United States and its allies in the

5 U.S.C. § 552 (2006). The district court found that the privacy exemptions in FOIA did not protect that information from disclosure, concluding that the detainees and their family members had no cognizable privacy interest and that the public interest in disclosure was great. We hold that the detainees and their family members do have a measurable privacy interest in the nondisclosure of their identifying information in these records and that the AP has failed to show how the public interest would be further served by disclosure of their identities. We conclude that the FOIA privacy exemptions protect this information from disclosure. We reverse.

**Background**

This case arises out of two FOIA requests submitted to DOD by AP, seeking documents related to detainee treatment at Guantanamo Bay. The first was made on November 16, 2004, and requested, *inter alia,* copies of documents containing allegations or accounts of mistreatment of detainees by U.S. military personnel since January 2002, including any disciplinary action taken, and copies of documents containing allegations of detainee-against-detainee abuse. A subsequent January 18, 2005 request was made for documents related to ARB hearings, including (1) transcripts of testimony; (2) written statements and other documents provided by detainees; (3) affidavits submitted by witnesses to the ARBs; (4) allegations against the detainees; and (5) explanations of decisions made to release or transfer detainees.

AP filed a complaint on June 9, 2005 to compel DOD to produce the requested documents. DOD responded by producing 1,400 pages of documents, many of which had extensive redactions. DOD moved for summary judgment on February 23, 2006, and AP cross-

_____

ongoing armed conflict against Al Qaida and its affiliates and supporters or to explain why his release would otherwise be appropriate.

moved for summary judgment on March 3, 2006.[2]  By the time the motions were addressed by

the district court, the dispute had narrowed to four categories of redaction: (1) identifying

information of detainees who allege abuse by DOD personnel, which DOD had redacted pursuant

to FOIA Exemptions 6 and 7(C);[3] (2) identifying information of detainees involved in allegations

---

[2] Although the docket and Joint Appendix reflect that DOD first moved for summary judgment and AP subsequently cross-moved for summary judgment, in its order the district court stated that: "AP's motion for summary judgment is hereby granted, and DOD's counter-motion denied."

[3] The FOIA exemptions are found at 5 U.S.C. § 552(b), which provides:

This section does not apply to matters that are--

(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy,

of detainee-against-detainee abuse, which DOD had redacted pursuant to Exemptions 6 and 7(C); (3) identifying information of detainees in transfer-release documents, which DOD had redacted pursuant to Exemptions 5 and 6; and (4) identifying information of detainees' family members in correspondence sent to detainees and submitted by the detainees in their ARB proceedings, which DOD had redacted pursuant to Exemptions 3 and 6.

On September 20, 2006, the district court granted AP's motion for summary judgment in large part and denied DOD's counter-motion, holding that AP "is entitled to nearly all the information it seeks." First, it ruled that Exemptions 6 and 7(C) did not apply to identifying information of detainees who allege abuse by DOD personnel because "the privacy interest is minimal and the public interest is great" such that "disclosure of this information would

---

> (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;
>
> (8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or
>
> (9) geological and geophysical information and data, including maps, concerning wells.

5 U.S.C. § 552(b) (2006). The exemptions are referred to by number, e.g., "Exemption 6," which can be found at 5 U.S.C. § 552(b)(6).

constitute neither a clearly unwarranted [under Exemption 6], nor an unwarranted [under Exemption 7(C)] invasion of personal privacy." At issue were eight files from investigations into detainee mistreatment by military personnel in which DOD had redacted the names and other identifying information of the detainees involved. The district court explained that Exemptions 6 and 7(C) require the court to balance the privacy interest and public interest; it found that it was "hard to see that any substantial privacy interest is involved" because the detainees' identities were fully known to the personnel they accused and to the personnel who responded to the accusations. It further explained that detainees, like other prisoners, have minimal privacy rights, and surmised moreover that "individuals detained incommunicado without many procedural safeguards . . . would want their plights, and identities, publicized." The district court based the latter conclusion on the fact that three former detainees had issued a report in 2004 alleging that they had been beaten and mistreated in Guantanamo; other detainees had conveyed such abuse allegations to the public through their attorneys; and still other detainees had participated in hunger strikes to protest alleged abuse. Against what it determined to be a minimal privacy interest, the district court weighed the "considerable public interest in learning more about DOD's treatment of identifiable detainees, whether they have been abused, and whether such abuse has been properly investigated." It found that AP had made a showing of evidence "that would warrant belief by a reasonable person that the alleged Government impropriety might have occurred." Thus, it concluded that because the public interest is great and the privacy interest minimal, the redactions had to be removed and the identifying information disclosed.

Second, the district court concluded that identifying information of detainees involved in allegations of detainee-against-detainee abuse did not fall under Exemptions 6 and 7(C). The documents at issue were reports of allegations of detainee-against-detainee abuse recorded by military personnel. In considering the privacy interest of the detainees, the district court first found that the interest of the detainees alleging abuse was minimal because their purpose in making the allegations was "to bring them to light." Although the court commented that the privacy interest of detainees against whom allegations of abuse were made "might be slightly more weighty," it reiterated that prisoners have modest privacy rights. The district court also pointed out that the government had "failed to make a particularized showing of why any given one of [the detainees] has a material privacy interest in keeping his identity secret." It therefore concluded that any privacy interest was "substantially outweighed by the public interest in knowing more about the context in which DOD was called upon to evaluate the allegations," reasoning further that this inquiry could only be explored if the particulars about the person whose conduct was in question were known. Specifically, the district court explained that without the names, AP would not know the detainees' nationalities or religions; without that information it would be impossible to scrutinize DOD's conduct.

Third, the district court found that identifying information of detainees in transfer-release documents did not fall under Exemptions 5 and 6 and must be disclosed.[4] The district court reasoned that Exemption 5, which exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the

_____

[4] DOD has since produced these documents, unredacted, and does not challenge this decision on appeal.

7

agency," 5 U.S.C. § 552(b)(5), did not apply to the transfer-release documents because they do not fall within the scope of the deliberative process privilege. It also concluded that Exemption 6 did not apply because the government did not offer more than "conclusory speculation" that disclosure of the information could subject detainees and their family members to harm.

On the final issue, the district court held, with one exception, that the redacted identifying information of detainees' family members contained in their letters submitted by the detainees at their ARB proceedings, did not fall under Exemptions 3 or 6. Exemption 3 protects from disclosure matters that are "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The district court reasoned

that while 10 U.S.C. § 130c is an applicable withholding statute,[5] the documents did not arguably

or logically fall within its scope and thus did not fall under Exemption 3.

As to Exemption 6's applicability to the family members' identifying information, the

district court found this to be "a closer call." In its previous decision in *Associated Press v. U. S.*

---

[5] 10 U.S.C. § 130c provides that a "national security official . . . may withhold from public disclosure otherwise required by law sensitive information of foreign governments in accordance with this section." The relevant requirements are:

> (b) Information eligible for exemption.--For the purposes of this section, information is sensitive information of a foreign government only if the national security official concerned makes each of the following determinations with respect to the information:
>
>> (1) That the information was provided by, otherwise made available by, or produced in cooperation with, a foreign government or international organization.
>>
>> (2) That the foreign government or international organization is withholding the information from public disclosure (relying for that determination on the written representation of the foreign government or international organization to that effect).
>>
>> (3) That any of the following conditions are met:
>>
>>> (A) The foreign government or international organization requests, in writing, that the information be withheld.
>>>
>>> (B) The information was provided or made available to the United States Government on the condition that it not be released to the public.
>>>
>>> (C) The information is an item of information, or is in a category of information, that the national security official concerned has specified in regulations prescribed under subsection (f) as being information the release of which would have an adverse effect on the ability of the United States Government to obtain the same or similar information in the future.

10 U.S.C. § 130c(b) (2006) (footnote omitted).

9

*Dep't of Def.*, 410 F. Supp. 2d 147, 150, 152 (S.D.N.Y. 2006) ("*AP I*"),[6] the district court had stated that third parties have little expectation of privacy in information disclosed at the ARB proceedings, but it had invited DOD to make a "particularized showing" that a specific detainee had retained a reasonable expectation of privacy with respect to a specific item of information. In the current case, the district court analyzed such evidence presented by the government. As to Detainee b(1), the district court found that there was no indication that the detainee's testimony would invite retaliation from the Taliban where he had testified that his involvement with the Taliban was at a lower level than charged. As to Detainee b(2), the court found that the government had met its burden to show that he had retained a reasonable expectation of privacy. Detainee b(2), in his testimony before the ARB, had said he "despised" the Taliban; he was also reluctant to share a letter from his wife before the ARB. Thus, as to Detainee b(2), the district court upheld DOD's redaction of the detainee's wife's identifying information from her letter.[7]

---

[6] In *AP I*, the district court held that identifying information of detainees in transcripts from military tribunal hearings was not exempted from disclosure under Exemption 6. *AP I*, 410 F. Supp. 2d at 151 ("Department of Defense has failed on this motion to establish, by undisputed admissible evidence, any cognizable privacy interest on the part of the detainees that would warrant the across-the-board application of Exemption 6 the defendant here seeks."). AP had made a FOIA request for the transcripts from the military tribunals where the government had determined that detainees were enemy combatants; DOD produced redacted copies of transcripts and other related documents. *Id.* at 149. Even though the argument had not been properly raised, the court also considered DOD's argument that the family members and other third parties whose identifying information had been redacted from the documents also had a privacy interest in nondisclosure. *Id.* at 153-54. The court concluded that these third parties did not have a cognizable privacy interest in nondisclosure of their identities because they lacked a reasonable expectation of privacy in that information. *Id.* at 156-57. Some of the documents included Red Cross Messages ("RCMs") from detainees' family members; upon the disclosure of these documents, the Red Cross specifically requested that DOD not release any more RCMs. DOD did not appeal from the decision in *AP I*.

[7] AP does not challenge the district court's decision to uphold redaction of Detainee b(2)'s wife's identifying information.

DOD appeals from the district court's decision, but challenges only its rulings with respect to (1) redaction of identifying information in records relating to allegations of detainee mistreatment and detainee-against-detainee abuse; and (2) redaction of identifying information of detainees' family members.

## Discussion

### Standard of Review

We review *de novo* the district court's grant of summary judgment in a FOIA case. *Wood v. FBI*, 432 F.3d 78, 82 (2d Cir. 2005).

### Applicable Law

FOIA was enacted "to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), and was designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal quotation marks omitted). Consistent with FOIA's purpose and design, "the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173. The agency must disclose its records "unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." *Wood*, 432 F.3d at 82-83 (internal quotation marks omitted). FOIA exemptions are to be construed narrowly, "resolving all doubts in favor of disclosure," and "[t]he government bears the burden of establishing that any claimed exemption applies." *Id.* "That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *Ray*, 502 U.S. at 173. Redaction, however, is "expressly authorized by FOIA," which indicates that Congress

11

"recognized that the policy of informing the public about the operation of its Government can be adequately served in some cases without unnecessarily compromising individual interests in privacy." *Id.* at 174.

**Detainees' Identifying Information – Exemption 7(C)**

Exemption 7(C) exempts from disclosure "records or information compiled for law enforcement purposes" when production of such records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) requires a court to "balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *U. S. Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 776 (1989). The first question to ask in determining whether Exemption 7(C) applies is whether there is any privacy interest in the information sought.[8] *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 509 (1992) ("Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests.").[9] The Supreme Court has explained that such

---

[8] In *Reporters Committee*, the Supreme Court held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." 489 U.S. at 780. The Court reasoned that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Id.* at 776. DOD argues that the privacy interests at stake here are readily assessed on a categorical basis. The AP counters that individualized consideration of those interests is appropriate. We are cognizant of the Supreme Court's holding in *Reporters Committee*. However, because our disposition of this appeal would be the same regardless of how we considered the privacy interests accommodated in Exemptions 7 and 6 for those persons whose information may be disclosed here, we do not need to decide whether we must analyze them categorically or individually.

[9] Although *Fed. Labor Relations Auth.* 958 F.2d at 508, addressed the applicability of Exemption 6 to the information sought through FOIA, its discussion of the approach for applying FOIA's privacy exemptions is apposite here. While Exemptions 6 and 7(C) provide differing

privacy interests include "the individual interest in avoiding disclosure of personal matters" as well as "the interest in independence in making certain kinds of important decisions." *Reporters Comm.*, 489 U.S. at 762. It further explained that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person," *id.* at 763, and thus that there is a recognized "privacy interest in keeping personal facts away from the public eye," *id.* at 769. It is well established that identifying information such as names, addresses, and other personal information falls within the ambit of privacy concerns under FOIA. *See Rose*, 425 U.S. at 380-81 (recognizing privacy interest in identifying information about cadets redacted from case summaries arising out of ethics hearings at the Air Force Academy); *Ray*, 502 U.S. at 175-77 (reasoning privacy interest in names of interviewees is significant where their names could then be linked to other personal information in the interviews); *Wood*, 432 F.3d at 88 (recognizing privacy interest in identities of government investigators where disclosure could result in harassment and embarrassment); *Fed. Labor Relations Auth.*, 958 F.2d at 510-11 (recognizing privacy interest in names and addresses of federal employees).

We have said that "FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests." *Fed. Labor Relations Auth.*, 958 F.2d at 510.

---

degrees of protection, the privacy interest protected by each is the same for purposes of our analysis. *Id.* at 509 ("That Exemptions 6 and 7(C) provide differing levels of protection once a privacy interest is implicated is irrelevant to determining the sort of privacy interest that must first be shown before protection is afforded at all."). We thus draw from case law interpreting both Exemptions 6 and 7(C) to elucidate the contours of the privacy interest protected, as well as the public interest that would be furthered by disclosure. In doing so, we recognize that "the greater protection of privacy extended under Exemption 7(C) goes to the degree of invasion to this privacy interest that will be tolerated before disclosure is prohibited." *Id.* at 510.

Thus, "once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA." *Id.*

As for the public interest against which the privacy interest is to be weighed, the Supreme Court has made clear that there is only one relevant interest, namely, "to open agency action to the light of public scrutiny." *Reporters Comm.*, 489 U.S. at 772 (quoting *Rose*, 425 U.S. at 372). The public interest "cannot turn on the purposes for which the request for information is made," and "the identity of the requesting party has no bearing on the merits of his or her FOIA request." *Id.* at 771. Whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on "the citizens' right to be informed about what their government is up to." *Ray*, 502 U.S. at 177 (quoting *Reporters Comm.*, 489 U.S. at 773). The Supreme Court has also said that:

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise the invasion of privacy is unwarranted.

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). If the requester asserts that the reason for the disclosure is to uncover government impropriety or negligence, "the requester must establish more than a bare suspicion in order to obtain disclosure." *Id.* at 174. Rather, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.*

With these standards in mind, we turn to the specific redactions at issue in this case.

14

The first two sets of documents at issue are (1) eight files containing records documenting allegations of detainee abuse by military personnel;[10] and (2) documents containing reports of allegations of detainee-against-detainee abuse. In both sets of documents, DOD redacted all identifying information of the detainees involved, asserting that it did so to protect the detainees' personal privacy pursuant to Exemptions 6 and 7(C). As a preliminary matter, it is undisputed that these documents were "compiled for law enforcement purposes" so as to fall under Exemption 7(C). Indeed, the records were compiled to document allegations of abuse and to impose disciplinary sanctions against military personnel and detainees where appropriate. *See Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66-67 (2d Cir. 2008) (certain United States Army's photographs gathered during its Criminal Investigation Command investigations were documents compiled for law enforcement purposes); *cf. Aspin v. Dep't of Defense*, 491 F.2d 24, 29 (D.C. Cir. 1973) (holding that Peers Commission Report was produced as an investigatory file compiled for law enforcement purposes). We proceed to the Exemption 7(C) analysis with this in mind.

### (1) Privacy Interest

We consider whether the detainees have any privacy interest in the nondisclosure of their names and identifying information in the records containing allegations of abuse by military personnel and by other detainees. That interest need only be more than *de minimis* to trigger the application of the balancing test to determine whether disclosure is permitted under FOIA. *See*

---

[10] These files contain detailed reports about eight different allegations of alleged misconduct by military personnel, including incidents of spraying detainees with water hoses, striking detainees, using pepper spray against detainees, splashing detainees with cleaning products, and other mistreatment.

*Fed. Labor Relations Auth.*, 958 F.2d at 510. For the reasons stated below, we conclude that the detainees, both those who have suffered abuse and those who are alleged to have perpetrated abuse, have a measurable privacy interest in the nondisclosure of their names and other identifying information in these records.

The privacy interest protected by Exemption 7(C) is an interest in "avoiding disclosure of personal matters" and "keeping personal facts away from the public eye." *Reporters Comm.*, 489 U.S. at 762, 769. An individual's privacy interest is particularly pronounced where disclosure could lead to embarrassment or retaliation. *Ray*, 502 U.S. at 176-77. In *Ray*, the Supreme Court explained that Haitians who had been returned to Haiti under an agreement with the Haitian government that it would not prosecute them for illegally leaving the country had a substantial privacy interest in the nondisclosure of their names in transcripts from interviews with the U.S. Department of State. *Id.* The State Department interviewed the Haitian returnees to determine whether the Haitian government was indeed making good on its promise not to prosecute those returned. *Id.* at 168. The Supreme Court, quoting the State Department, reasoned that "disclosure of the interviewees' identities could subject them or their families to embarrassment in their social and community relationships," and that "the privacy interest in protecting these individuals from any retaliatory action that might result from a renewed interest in their aborted attempts to emigrate must be given great weight." *Id.* at 176-77. Finally, the Court noted that the FOIA requesters intended to make direct contact with the Haitian returnees, and that this

possibility "magnifies the importance of maintaining the confidentiality of their identities." *Id.* at 177.[11]

Each of these concerns is involved in this case. We first consider the detainees who allegedly have been abused by military personnel or other detainees. Certainly they have an interest in both keeping the personal facts of their abuse from the public eye and in avoiding disclosure of their identities in order to prevent embarrassment. As victims of abuse, they are entitled to some protection of personal information that would be revealed if their names were associated with the incidents of abuse. The disclosure of their names could certainly subject them to embarrassment and humiliation.

We disagree with the district court's conclusion that the detainees who allegedly have been abused do not have any substantial privacy interest because they, like prisoners, have little reasonable expectation of privacy. Although the detainees here are indeed like prisoners, their Fourth Amendment reasonable expectation of privacy is not the measure by which we assess their personal privacy interest protected by FOIA. Rather, the privacy interest for purposes of Exemption 7(C) is broad and encompasses "the individual's control of information concerning his or her person." *Reporters Comm.*, 489 U.S. at 763. Moreover, the district court's reasoning that the detainees allegedly abused would want their plights publicized is also inapposite to the

_____

[11] In assessing the privacy interest of the Haitian returnees, the Supreme Court pointed out that the State Department interviews had been conducted under a promise of confidentiality. *Ray*, 502 U.S. at 177. This fact, though not dispositive in the analysis, was given a "special significance" because the returnees may have disclosed information at those interviews that they would not have had they known that their identities would be publicly disclosed. *Id.*

17

privacy interest at stake here.[12] That a detainee might want to voluntarily disclose information publicly does not authorize the government to disclose that information, and the district court cites no law to support that proposition, nor do we find any.[13] *Cf. Associated Press v. U.S. Dep't of Justice*, No. 07-1384-cv, 2008 WL 5047793, at *3, *4 n.2 (2d Cir. Dec. 1, 2008) (holding that the commutation petition filed by John Walker Lindh was exempt from disclosure under Exemptions 6 and 7(C) and noting that, although ultimately an agreement could not be reached by the parties, prior to the appeal the petitioner consented to the release of his petition contingent upon redaction to protect any information that might compromise his privacy or safety – a condition that was not acceptable to the requester AP).

Second, we consider the detainees who are alleged to have abused other detainees. Even more so than the victims of this alleged abuse, these alleged abusers have a significant privacy interest in keeping their identities undisclosed. It is likely that identifying them could subject them to embarrassment and humiliation. The district court acknowledged that "the privacy

---

[12] We note, without deciding, that the district court's conclusion in this regard appears to be somewhat speculative; it based its determination that abused detainees would want their incidents of abuse publicized on the reports of a limited number of detainees who opted to come forward.

[13] By finding that the abused detainees have a measurable privacy interest in the nondisclosure of their names and identifying information in records documenting this abuse, we do not mean to suggest, or in any way condone, that the government may use this privacy interest to maintain a "veil of administrative secrecy" around events occurring at Guantanamo Bay. *See Rose*, 425 U.S. at 361. We make two points in this regard. First, the identification of this privacy interest means only that the FOIA requester will have to show how release of the detainees' names and identifying information will further the public interest, and does not give the government a blank check to keep such information from the public eye. Second, we do not mean to suggest that detainees should be prevented in any way from coming forward publicly with allegations of mistreatment or abuse at the hands of DOD in Guantanamo; this opinion does not empower the government to prevent such public disclosure by the detainees themselves based on this recognized privacy interest.

interests of the detainees about whom the allegations were made might be slightly more weighty," but ultimately found that as prisoners, their privacy rights "are extremely modest." Again, we disagree with the district court's finding in this regard and conclude that the detainees accused of abusing other detainees have a measurable privacy interest that triggers Exemption 7(C)'s protection of their identifying information.

### (2) Public Interest

Having established that the detainees have a measurable privacy interest in the nondisclosure of their names and other identifying information, we turn to the question of whether disclosure of that information would further the public interest such that disclosure would be a warranted invasion of the detainees' personal privacy. *See Reporters Comm.*, 489 U.S. at 771 ("We must next address what factors might *warrant* an invasion of the [privacy] interest described [above].") (emphasis in the original). We undertake this part of the analysis mindful that there is only one relevant public interest, that of "open[ing] agency action to the light of public scrutiny," *id.* at 772 (quoting *Rose*, 425 U.S. at 372), and that the public interest "cannot turn on the purposes for which the request for information is made" nor on "the identity of the requesting party," *id.* at 771.

The Supreme Court has made it clear that once a privacy interest is identified, disclosure is unwarranted under Exemption 7(C) unless the requester can show a "sufficient reason for the disclosure." *Favish*, 541 U.S. at 172. The "citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and the citizen "must [also] show the information is likely to advance that interest." *Id.* In the context of addressing whether disclosure of redacted names and identifying information is

19

warranted, the Supreme Court has explained that where disclosure of the documents themselves adequately serve the public interest, a requester must show how "the addition of the redacted identifying information" would "shed any additional light on the Government's conduct." *See Ray*, 502 U.S. at 178 (holding that "the public interest in knowing whether the State Department has adequately monitored Haiti's compliance with its promise not to prosecute returnees" had been "adequately served by disclosure of the redacted interview summaries and that disclosure of the unredacted documents would therefore constitute a clearly unwarranted invasion of the interviewees' privacy"); *see also U. S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (concluding that disclosure of agency bargaining unit employees' addresses "would reveal little or nothing about the employing agencies or their activities" in determining that "the relevant public interest supporting disclosure in this case is negligible"). This Court has similarly said that "disclosure of information affecting privacy interests is permissible only if the information reveals something *directly* about the character of a government agency or official." *Hopkins v. U. S. Dep't of Hous. & Urban Dev.*, 929 F.2d 81, 88 (2d Cir. 1991) (holding that disclosure of names and addresses sought "would shed no light on HUD's performance in enforcing the prevailing wage laws") (emphasis in the original). We now consider whether the public interest would be served by the disclosure of the detainees' names and identifying information, and, if so, whether that interest outweighs the detainees' privacy interest in nondisclosure.

AP asserts three arguments as to how the public interest would be served by disclosure of the detainees' names and identifying information: (1) the information is necessary to provide context for DOD's response to the abuse allegations because it would allow the public to know

the detainees' nationalities and religions; (2) the information would allow the public to evaluate DOD's other actions with respect to these detainees, including transfer and release decisions; and (3) the information would allow the public to seek out the detainees' side of the story. For the reasons that follow, we conclude that these arguments are unavailing and that at most disclosure would only modestly further the public interest. That is, any public interest served by such disclosure is significantly outweighed by the detainees' privacy interest.

AP's first argument appears to suggest that the alleged government impropriety in handling these allegations of various abuses may be tied to the nationalities or religions of the detainees involved. In essence, AP implies that DOD may have responded differently to allegations of abuse depending on the nationalities or religions of the abused detainees. Without that underlying assumption, knowing the detainees' nationalities or religions would not serve the public interest because it would shed no light on what the government is up to. AP's argument in this regard is squarely foreclosed by *Favish*, in which the Supreme Court held:

> [W]here there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Favish*, 541 U.S. at 174. Favish asserted that the government had covered up the details surrounding the apparent suicide of Vincent Foster, Jr., deputy counsel to then President Clinton, and requested pictures from the death scene through FOIA. *Id.* at 160-62. The Supreme Court ruled that "Favish has not produced any evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 175. Similarly

21

here, AP has produced no evidence that DOD responded differently to allegations of abuse depending on the nationalities or religions of the detainees involved. Because there is no evidence of government impropriety in that regard, we cannot find that the public interest would be furthered based on a rationale grounded in disclosure of an individual's religion or nationality.

AP's second argument, that the names and identifying information would allow the public to track these detainees' treatment in other aspects of DOD actions, including transfer and release decisions, deserves more attention. If the public knew which specific detainees were involved in the allegations of abuse by military personnel and by other detainees, then it would be possible to see whether the detainees' involvement in those alleged abuses affected how they were otherwise treated throughout various administrative procedures. Pursuant to the particular FOIA requests at issue in this case, DOD released documents relating to ARB hearings where the government determined whether the detainees should be released, transferred to the custody of another government, or further detained. Thus, if the identities of the detainees involved in the abuse allegations were known, it might be possible to see whether those allegations affected the government's decision to transfer, release, or continue to detain them. Although under this rationale the public interest might be further served, the speculative nature of the result is insufficient to outweigh the detainees' privacy interest in nondisclosure.

AP's third argument, that the information will allow the public to seek out the detainees' side of the story, calls upon a "derivative use" theory. *See Ray*, 502 U.S. at 178. That theory posits that the public interest can be read more broadly to include the ability to use redacted information to obtain additional as yet undiscovered information outside the government files. *See id.* In *Ray*, the FOIA requester argued that the public interest would be served by disclosure

of the Haitian returnees' names because that information would allow the public to conduct its own interviews of the returnees to see if they corroborated the information in the State Department's interview transcripts. *Id.* at 177. The Supreme Court rejected this argument but chose not to decide squarely the question of "whether a 'derivative use' theory would ever justify release of information about private individuals" because it concluded that "there is nothing in the record to suggest that a second series of interviews with the already-interviewed returnees would produce any relevant information that is not set forth in the documents that have already been produced." *Id.* at 179. In so deciding, the Supreme Court reasoned that "[m]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *Id.*

Although this Court has not addressed the issue of whether a derivative use theory is cognizable under FOIA as a valid way by which to assert that a public interest is furthered, we have indicated that it may not be. *See Hopkins*, 929 F.2d at 88. In *Hopkins*, we addressed the Union's argument that the public interest would be served in disclosing HUD's payroll records because it would "enable the Union to determine whether HUD is fairly and adequately enforcing the prevailing wage laws." *Id.* We said "disclosure of this information would serve the public interest only insofar as it would allow the Union to contact individual employees, who may then dispute the accuracy of the data reflected in the records." *Id.* Refusing to order such disclosure, we commented that "[w]ere we to compel disclosure of personal information with so attenuated a relationship to governmental activity, however, we would open the door to disclosure of virtually all personal information, thereby eviscerating the FOIA privacy exemptions." *Id.*

23

We need not decide today whether a derivative use theory would ever justify the release of personal information because we find that the privacy interest of the detainees in nondisclosure of their names and identifying information is not outweighed by any minimal public interest that might be served by such disclosure. Disclosure of this information is, therefore, exempted under Exemption 7(C) because such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Because we find that Exemption 7(C) applies to the redactions of detainees' identifying information, we do not need to address the applicability of Exemption 6. *Reporters Comm.*, 489 U.S. at 762 n.12.

### Family Members' Identifying Information – Exemption 6

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To determine whether identifying information may be withheld pursuant to Exemption 6 we must: (1) determine whether the identifying information is contained in "personnel and medical files and similar files;" and (2) balance the pubic need for the information against the individual's privacy interest in order to assess whether disclosure would constitute a clearly unwarranted invasion of personal privacy. *Wood*, 432 F.3d at 86. The determination of whether Exemption 6 applies requires balancing an individual's right to privacy against the preservation of FOIA's basic purpose of opening agency action to the light of public scrutiny. *Rose*, 425 U.S. at 372. "Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests." *Fed. Labor Relations Auth.*, 958 F.2d at 509. As explained above, "FOIA requires only a measurable interest in privacy to trigger the application of the disclosure

balancing tests." *Id.* at 510.  "An invasion of more than a *de minimis* privacy interest protected by Exemption 6 must be shown to be 'clearly unwarranted' in order to prevail over the public interest in disclosure." *Id.*  Under Exemption 6, therefore, the government's burden in establishing the required invasion of privacy is heavier than the burden in establishing invasion of privacy under Exemption 7(C).  *Ray*, 502 U.S. at 172.  "Exemption 6 does not protect against disclosure every incidental invasion of privacy–only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy." *Rose*, 425 U.S. at 382.

The second set of documents at issue are personal letters sent to two detainees, Detainee b(1) and Detainee b(2), from their family members through the Red Cross.  These Red Cross Messages ("RCMs") were submitted to DOD by the detainees at their ARB hearings.  DOD redacted the names and addresses of the detainees' family members in these letters pursuant to FOIA Exemptions 3 and 6.  Preliminarily, we note that the parties do not dispute that the letters at issue are considered "personnel and medical files and similar files" within the meaning of Exemption 6.  Although the government does not indicate the specific category into which the family members' letters fall, it appears that "similar files" would be the closest description.  The phrase "similar files" has a broad meaning and encompasses the government's "records on an individual which can be identified as applying to that individual." *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 600-02 (1982).  Since the redacted records at issue apply to the detainees whose family members seek protection, those records are "similar files" within the meaning of Exemption 6.  *Cf. Ray*, 502 U.S. at 173 ("[R]eports from which identifying information was deleted unquestionably apply to the particular individuals who had been returned and interviewed . . . they are 'similar files' within the meaning of the exemption.").

25

We now consider whether the family members of Detainee b(1) and Detainee b(2) have more than a *de minimis* privacy interest in the disclosure of their names and addresses.

(1) Privacy Interest

The Supreme Court indicated that "privacy encompass[es] the individual's control of information concerning his or her person," *Reporters Comm.*, 489 U.S. at 763, and made "clear that an individual has a general privacy interest in preventing dissemination of his or her name and home address," *Fed. Labor Relations Auth.*, 958 F.2d at 510. This Court has recognized that third parties to proceedings have a cognizable privacy interest protected by the FOIA privacy exemptions. *See Perlman v. U.S. Dep't of Justice*, 312 F.3d 100, 106 (2d Cir. 2007), *vacated and remanded*, 541 U.S. 970 (2004), *aff'd* 380 F.3d 110 (2d Cir. 2004) (per curiam) (concluding that witnesses and third parties to the INS report of investigation "possess strong privacy interests, because being identified as part of a law enforcement investigation could subject them to 'embarrassments and harassment'").

The district court ordered disclosure of the family members' names and addresses except for Detainee b(2)'s wife reasoning that she retained a reasonable expectation of privacy in her identifying information such that it was withheld properly under Exemption 6. For the reasons noted above, we disagree with the district court that determining whether a person has a reasonable expectation of privacy is the manner by which to analyze the person's privacy interest under Exemption 6.

The government contends the family members have a substantial privacy interest in avoiding disclosure of their identifying information because that disclosure "could place the family members at risk of harm based on their connection to detainees who provided testimony

26

to the ARBs that DOD believes is likely to be perceived by the Taliban (including former associates of one detainee) as hostile, or even traitorous." According to DOD, the testimony of the two detainees at their ARB hearings, which appears "cooperative with the United States and hostile or disloyal to the Taliban, could subject the detainees' family members to retaliation."

We emphasize that "the focus, in assessing a claim under Exemption 6, must be solely upon what the requested information *reveals*, not upon what it might lead to." *Ray*, 502 U.S. at 180 (Scalia, J. concurring) (emphasis in the original). Therefore, DOD's claim that, although "necessarily uncertain," its assessment "that the detainees' ARB testimony could put their family members at risk of retaliation by terrorists dissatisfied with detainees' testimony to a U.S. tribunal," is not the focus of our inquiry under Exemption 6. Here, it is clear that the names and addresses of the family members, if disclosed, would reveal that particular persons are relatives of certain detainees held at Guantanamo Bay. If disclosed, the information would also reveal that the family members are relatives of certain Guantanamo Bay detainees who testified about the Taliban before the ARBs. We disagree with the district court's view that the testimony of Detainee b(1) might be perceived as adverse to the Taliban while the testimony of Detainee b(2) might not be, and we refuse to speculate about the nature or extent of any adversity involved. We find that disclosing the family members' names and addresses to the AP, and consequently to the public at large, involves a measurable privacy interest because the information that would be revealed by disclosure is the type of information that a person would ordinarily not wish to make known about himself or herself. *See id.* at 181. We now proceed to balance that privacy interest against FOIA's basic purpose of opening agency action to the light of public scrutiny.

(2) Public Interest

27

"Goals other than opening agency action to public scrutiny are deemed unfit to be accommodated under FOIA when they clash with privacy rights." *Fed. Labor Relations Auth.*, 958 F.2d at 510-11.

AP contends that the "public has a strong interest in evaluating whether DOD properly followed-up on [the detainees' mistaken identity] claims." DOD counters that the "names and addresses of family members contained in their personal letters to detainees reveal nothing about DOD's action. The only conceivable value of those names is to provide AP with leads for investigating the detainees' claims." We agree with DOD. We do not see and AP failed to explain how revealing the family members' names and addresses would inform the citizens about "what their government is up to." *See Ray*, 502 U.S. at 177. We conclude that the public interest in evaluating whether DOD properly followed-up on the detainees' claims of mistaken identity have been adequately served by the disclosure of the redacted information and that disclosing names and addresses of the family members would constitute a clearly unwarranted invasion of the family members' privacy interest because such disclosure would not shed any light on DOD's action in connection with the detainees' claims at issue here. Because Exemption 6 exempts from disclosure the identifying information of the detainees' family members, we do not address the applicability of Exemption 3 to these redactions.

## Conclusion

We hold that identifying information of the detainees in the records documenting allegations of abuse and identifying information of detainees' family members in letters submitted to the government are exempt from FOIA disclosure under Exemptions 7(C) and 6 respectively. The judgment of the district court is REVERSED.